IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

MONIQUE HAUTH,                                  Case No.: 3:16-CV-01003-AC

          Plaintiff,                              OPINION AND ORDER

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                    Defendant.

ACOSTA, Magistrate Judge:

Monique Hauth ("plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her application for Title XVI Supplemental Security Income ("SSI") under the Social Security Act ("Act"). Because the Commissioner's decision is supported by substantial evidence, his decision is AFFIRMED and this case DISMISSED.

*Procedural Background*

Plaintiff protectively filed her application for SSI on October 25, 2012, alleging disability

Page 1 - OPINION AND ORDER

as of January 20, 2012. (Tr. 145-51.)[1] The Commissioner denied her application initially and upon reconsideration, and she requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 88-91, 94-95, 100-02.) An administrative hearing was held on December 17, 2014. (Tr. 15-31.) After the hearing, the ALJ issued an unfavorable decision on January 14, 2015, finding plaintiff not disabled. (Tr. 18-27.) The Appeals Council denied plaintiff's subsequent request for review, making the ALJ's decision final. (Tr. 1-4.)

*Factual Background*

Born on December 3, 1965, plaintiff was 46 years old on the alleged onset date of disability and 49 years old at the time of the hearing. (Tr. 143, 145.) She speaks English, completed the eleventh grade, and attended special education classes. (Tr. 162, 164.) Plaintiff alleges disability due to fibromyalgia, scoliosis, kidney infections, and bladder infections. (Tr. 64, 72, 163.)

*Standard of Review*

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*,

---

[1] Plaintiff also applied for Disability Insurance Benefits ("DIB") on December 13, 2012, but her application was denied after the SSA determined she did not have enough quarters to qualify for coverage. (Tr. 84-87, 143-44.)

Page 2 - OPINION AND ORDER

486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920.[2] First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 416.920(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 416.920(c). If the claimant does not have a medically determinable, severe impairment, he is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 416.920(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. § 416.920(f). If the claimant can work, he is not disabled; if he cannot perform

---

[2]Effective March 27, 2017, updates were made to the regulations and some sections of the regulations were renumbered. The C.F.R. sections referenced throughout this opinion are the versions of the C.F.R. that were in effect at the time plaintiff requested judicial review.

past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national or local economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. § 416.920(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.966.

*The ALJ's Findings*

The ALJ performed the sequential analysis. At step one of the five-step process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since October 25, 2012, the application date. (Tr. 20.) At step two, the ALJ concluded that plaintiff had the following severe impairments: chronic cystitis,[3] status post transurethral fulguration, and chronic back pain. (Tr. 20-21.) At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. 21.)

The ALJ next assessed plaintiff's residual functional capacity ("RFC") and found that plaintiff has the RFC to

> perform light work as defined in 20 CFR 416.967(b), except: she is limited to standing and walking two to four hours total of eight; sitting without specific limitations; she may lift and carry up to twenty pounds occasionally and ten pounds frequently; and should work in an environment with ready access to a restroom.

(Tr. 21-25.)

At step four, the ALJ found that plaintiff had no past relevant work. (Tr. 25.) At step five, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that plaintiff could perform. (*Id.*) Specifically, the ALJ found that plaintiff could "perform the

---

[3] Cystitis is "the medical term for inflammation of the bladder. Most of the time, bacterial infection is the cause of the inflammation, referred to as a urinary tract infection (UTI). Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/cystitis/basics/definition/con-20024076.

Page 4 - OPINION AND ORDER

requirements of representative occupations such as Assembly (DOT 706.684-022)" and "Packing/Sorting (DOT 753.687-038)." (Tr. 26.) The ALJ therefore concluded plaintiff was not disabled. (*Id.*)

*Discussion*

Plaintiff argues that the ALJ erred by failing to: (1) provide a clear and convincing reason to reject her subjective symptom testimony; and (2) pose a hypothetical to the VE that included all of her alleged limitations. (Pl.'s Opening Br. 11-16, Pl.'s Reply Br. 3-6.)

I. Plaintiff's Subjective Symptom Testimony.

Plaintiff argues the ALJ erred by failing to provide a clear and convincing reason for rejecting her subjective symptom testimony concerning her pain from her chronic cystitis and her genitourinary disorders. (Pl.'s Opening Br. 6-11, Pl.'s Reply Br. 1-3.)

If "there is no affirmative evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only be offering specific, clear and convincing reasons for doing so.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281, 1283-84 (9th Cir. 1996)). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

At the hearing, plaintiff testified that she is unable to work due to urinary frequency associated with her urinary tract infections and constant pain. (Tr. 52-53.) She testified that when she has a urinary tract infection she uses the bathroom ten times in an hour, and that her back, shoulder, and hand pain make lifting, bending, and handling objects difficult. (Tr. 49-50, 52.)

Finally, plaintiff testified that she spends a lot of time laying in the fetal position to help alleviate the pain. (Tr. 50.) The ALJ rejected plaintiff's testimony regarding her symptoms and limitations and provided at least one clear and convincing reason for doing so.

The ALJ gave three reasons to discredit plaintiff's subjective symptom testimony, which include: (1) her activities of daily living were inconsistent with her "allegations of total disability"; (2) she received only conservative treatment for her impairments; and (3) she had good pain control on medications. The court rejects the first two of these reasons, but finds the third is a clear and convincing reason supported by substantial evidence for discrediting plaintiff's subjective symptom testimony. Each reason is discussed in detail below.

First, the ALJ found plaintiff's activities of daily living were inconsistent with her "allegations of total disability." (Tr. 23.) A plaintiff's activities of daily living may support an ALJ's decision to discredit the intensity and persistence of plaintiff's symptoms if they: (1) contradict a plaintiff's previous testimony, or (2) show that activities "meet the threshold for transferable work skills[.]" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ noted that plaintiff spent time preparing simple meals, washing dishes, doing laundry, shopping, learning to use the computer, caring for her disabled husband, and socializing over the phone and online. (Tr. 23.) Although plaintiff testified to performing these activities, they did not contradict her overall testimony that she "tr[ies] to do some household chores if the pain doesn't affect [her]," but spends most days "in bed or sit[ting] down for long periods of time." (Tr. 186.) The ALJ also failed to show how plaintiff's activities met the threshold for transferable work skills. For these reasons, plaintiff's performance of activities of daily living is not a clear and convincing reason to reject her subjective symptom testimony.

Second, the ALJ discredited plaintiff's subjective symptom testimony because he found plaintiff received only conservative treatment for her impairments. (Tr. 23.) "'[C]onservative treatment' is sufficient to discount a claimant's testimony regarding the severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)). However, an independent review of the record shows plaintiff did not receive conservative treatment for her impairments, and was returning numerous times for recurring urinary tract infections that caused discomfort and pain. (*See* Tr. 293, 428, 504, 526, 533, 535, 543, 584, 637, 643, 647.) Therefore, this is not a clear and convincing reason supported by substantial evidence to discredit plaintiff's subjective symptom testimony.

Finally, the ALJ found plaintiff had good pain control on medications. (Tr. 23.) The ALJ noted that in February 2013, plaintiff reported having improved pain with Vicodin and reported adequate pain control in June 2013. (Tr. 24, citing Tr. 365, 387.) Additionally, the ALJ found that in September 2014 plaintiff reported to Mr. Richard Powers, treating FNP, that Norco and Flexeril made pain control satisfactory. (Tr. 24, citing Tr. 542.) An ALJ may consider the effectiveness or adverse side effects of any pain medication when making a credibility determination. *Orteza*, 50 F.3d at 750 (citation omitted). Indeed, plaintiff reported that she was "satisfied with her current pain management" and rated her pain as a three out of ten when taking Vicodin. (*See* Tr. 387, 542.) While variable interpretations of this evidence may exist, the ALJ's analysis was nonetheless reasonable, such that it must be upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). In sum, the ALJ provided at least one clear and convincing reason, supported by substantial evidence, for rejecting plaintiff's subjective symptom testimony. There is no error.

II. <u>Plaintiff's RFC and Step Five Findings</u>.

Next, plaintiff argues that the ALJ erred by failing to pose a hypothetical to the VE that included all of her imitations. (Pl.'s Opening Br. 11-16, Pl.'s Reply Br. 3-6.) Essentially, plaintiff argues the ALJ's RFC finding and subsequent step five findings are not based on substantial evidence in the record because they did not include limitations associated with her toileting, handling, and reading and writing, which if credited, would require a finding that plaintiff is disabled. (Pl.'s Opening Br. 16, Pl.'s Reply Br. 3.)

*A.  Plaintiff's RFC.*

The RFC is the maximum a claimant can do despite his limitations. *See* 20 C.F.R. § 416.945. In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p. The ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

1.  Toileting.

Plaintiff argues that the ALJ erred by failing to address the "frequency or duration of bathroom visits" when assessing her RFC, specifically arguing that the ALJ's RFC limitation that plaintiff have ready access to a restroom does not account for the time that she would be away from her work station because of her urinary frequency. (Pl.'s Opening Br. 14-15, Pl.'s Reply Br. 3-6.)

Here, the ALJ found plaintiff's chronic cystitis was a severe impairment and, in evaluating

her RFC, considered plaintiff's testimony concerning her urinary tract infections. (Tr. 20, 22.) The ALJ noted plaintiff's testimony that she uses the bathroom ten times an hour when suffering from an urinary tract infection, wears a diaper, and cannot perform full-time work because she needs to use the restroom frequently. (Tr. 22.) Additionally, the ALJ noted that plaintiff reported to Dr. Stanley Myers that her urinary urgency had improved after he performed a transurethral fulguration of the left bladder diverticulum in August 2014. (Tr. 24, citing Tr. 637.) Based on this evidence, the ALJ included in plaintiff's RFC that she "should work in an environment with ready access to a restroom." (Tr. 21.)

Plaintiff argues the RFC limitation does not address the "frequency or duration of bathroom visits," which she argues is of "critical importance" to determine whether she can sustain work. (Pl.'s Opening Br. 14.) Although the ALJ does not specifically address the duration of plaintiff's bathroom visits, the court overall finds no error. The ALJ reasonably assessed plaintiff's limitations relating to her toileting needs, including in the RFC the requirement that plaintiff "work in an environment with ready access to a restroom." (Tr. 21.) Although plaintiff argues that the duration of her toileting requirements were not addressed, at step four the burden of proof lies on the plaintiff, and this court fails to see any evidence provided by plaintiff to show she is spending extended periods of time in the restroom that require any additional RFC limitations. *See Pinto v. Massanari*, 249 F.3d 843, 844 (9th Cir. 2001) (burden of proof at step four lies with the claimant). For these reasons plaintiff's argument fails and there is no error.

2. Handling.

Next, plaintiff argues that the ALJ erred by failing to account for limitations caused by her hand pain. (Pl.'s Opening Br. 15-16, Pl.'s Reply Br. 6.) The ALJ discussed plaintiff's reports of

Page 9 - OPINION AND ORDER

hand pain causing her to drop items, but found no functional limitations in handling, noting that x-rays of plaintiff's right hand showed only "mild right wrist osteoarthritis." (Tr. 20, 22, 25.) Additionally, the ALJ noted that although FNP Powers opined that plaintiff had functional limitations in reaching, grasping, pushing, pulling and manipulation, the ALJ reasonably dismissed these limitations finding that "no specialist has fully examined [plaintiff]'s hands," that plaintiff's wrist pain began "after she was active with organizing and lifting around the home," and FNP Power's limitations were based on plaintiff's subjective statements, which the ALJ reasonably rejected. (Tr. 25, citing Tr. 543.)

The court notes plaintiff's x-rays show osteoarthritis, with the overall findings of "mild narrowing and marginal spurring affects all of the interphalangeal joints of both hands," and "mild narrowing of the trapezium first metacarpal joint bilaterally." (Tr. 558.) The ALJ reasonably interpreted these findings showed only mild osteoarthritis. Additionally, an independent review of the record shows plaintiff's complaints of hand pain came after she reported doing heavy lifting, and there are no records showing she sought any additional relief for her hand pain. (*See* Tr. 228, 543.) Although plaintiff requests an alternate reading of the evidence, "[w]hen the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198. There is no error.

\\\\\

### 3. Reading and Writing.

Finally, plaintiff argues that the ALJ erred by failing to account for her illiteracy. (Pl.'s Opening Br. 13.)

The Social Security regulations contain a list of categories used to evaluate a claimant's educational level, which include categories for illiteracy and limited education. *See* C.F.R. § 416.964(b). Under these categories illiteracy is defined as "the inability to read or write." 20 C.F.R. § 416.964(b)(1). "Generally, an illiterate person has had little or no formal schooling." *Id.* The C.F.R. further provides: "We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." 20 C.F.R. §416.964(b)(1). "Limited education" is defined as

> ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.

20 C.F.R. §416.964(b)(3). "[T]he numerical grade level that you completed in school may not represent your actual educational abilities," but "if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities." 20 C.F.R. §416.964(b).

Here, the ALJ noted that plaintiff testified she "can barely read" and obtained her commercial driver's license and regular driver's license by studying tapes and taking an oral examination. (Tr. 22.) The ALJ overall found that plaintiff had a "limited education" and could communicate in English. (Tr. 25.) Based on these findings, the ALJ determined plaintiff had the RFC to complete assembly jobs and packing and sorting jobs. (Tr. 21.) The court finds the ALJ reasonably evaluated plaintiff's testimony and found she had a "limited education." Illiteracy means the inability to read,

Page 11 - OPINION AND ORDER

and as noted by the ALJ, plaintiff testified that she can "barely read," not that she could not read. (Tr. 22.) Additionally, evidence of record shows plaintiff completed some high school and special education classes, so it was reasonable for the ALJ to conclude she had a "limited education," as opposed to being illiterate. (*See* Tr. 162, 164.) There is no error.

B.   *Step Five Findings.*

Finally, plaintiff essentially argues that the ALJ erred by relying on the VE's testimony to find that plaintiff had the ability to perform other jobs in the national economy because the hypotheticals propounded to the VE were based on a flawed RFC assessment. (Pl.'s Opening Br. 11-16, Pl.'s Reply Br. 3-6.)

At step five, the burden of proof shifts to the Commissioner to demonstrate that the claimant can engage in some type of substantial gainful activity that exists in "significant numbers" in the national economy. *Yuckert,* 482 U.S. at 141-42. The step five analysis requires assessment of the medical evidence, the claimant's daily activities, prior work record, functional restrictions and limitations, medication and other treatment for relief of symptoms, and evidence from physicians and third parties. 20 C.F.R. § 416.929. Typically, the ALJ propounds a hypothetical question to the VE that is based on medical assumptions supported by the record and reflects all of the claimant's limitations. *Osenbrock,* 240 F.3d at 1163-64. If the claimant fails to present evidence that she suffers from certain limitations, the ALJ need not include those alleged impairments in the hypothetical question to the VE. *Id.*

Here, the ALJ propounded a hypothetical to the VE based on the RFC finding. (Tr. 58-60.) Under the hypothetical, the VE found plaintiff could perform assembly jobs, and packaging and sorting jobs that exist in the national economy. (Tr. 59.) As discussed above, the ALJ reasonably

assessed plaintiff's RFC. Therefore the hypothetical propounded to the VE incorporated all of Lehman's limitations, and the ALJ did not err in relying on the VE testimony. There is no error.

## *Conclusion*

Based on the foregoing discussion, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 11th day of October, 2017.

_____
JOHN V. ACOSTA
United States Magistrate Judge